Curia, per

Richardson, J.
We need add but little to the exposition, by the Circuit Judge, of the law, or of the facts upon which this application was made.
The Act of 1839 does not repeal the Election Law of 1815, (5 Stat. So. Ca. 13,) but so alters its provisions as to leave it applicable to only a few cases. I would not say that any further vacancy in office can be filled under its provisions : but it still stands to meet a possible case, and forms a part of our system of popular appointment to office. The Act of 1839, by its first section, provides for vacancies about to occur by the expiration Of an office at its legal or constitutional termination; and requires the Clerks of Courts, “at least two months” before such regular termination, to advertise an election, in order to anticipate the expected vacancy. The Clerk is, also, to name some Monday within the sixty days (to prevent an interregnum, evidently,) but exceeding thirty days, after the date of his advertisement, as the day of election. The 2d section provides, “when any vacancy shall occur” by death, omission, or refusal to serve, or the like, the Clerk shall give the same timely notice, and so forth. Both sections are prospective, and provide for vacancies that were to occur after the passing of the Act, (21 December, 1839.)
The question, therefore, is, did the vacancy in the Clerk’s office, at Lexington, exist on the 21st December, 1839.
The Act of 1815 provides that elections, to fill such vacancies, shall be holden on the second Monday, and the day after, in January; and the officer elected shall go into office *268 Qn the second Monday in February thereafter. And the third section of that Act provides that the Governor, shall fill up all vacancies, &c., “to hold under such appointment until such time as an election shall take place,” &c. When the Governor, tliep, appointed Reuben Harmon to the office vacated by Edwin Scott, the appointee was to hold the office, either till the election in January, or, perhaps, to the second Monday in February, — when, by the Act, the person elected would go into office. Now, then, if we are to consider the Clerk’s office as vacapt from" the moment Edwin Scott resigned it, the vacancy had occurred before the Act of 1839; and therefore the election could not be brought under its provisions, and fhe argument of the Circuit Judge would be conclusive.
But, if we are to consider the appointment of Reuben Harmon as a legal filling of the vacancy, so as to constitute a perfect term of office, to expire regularly, either upon the election in January, or on the second Monday in February; then no casual vacancy had occurred so as to bring the election within the second section of the Act of 1839; but it would be, in the language of the second section, “a vacancy about to occur” upon the regular termination of the office, (in January, or February;) and, then, the Clerk could not have advertised “at least two months” before the term of the office would have expired, for two months could not elapse between the 21st December and the second Monday in FeR jruary.
It is plain, then, that under any construction, the vacancy in question could not have been filled by an election held under either section ,of the Act of 1839 ; and the managers, therefore, very properly held the election under the Act of }815.
It is still .very possible that other elections may yet be hol-den Under that Act. The Act of 1839 requires that the Clerk {shall advertise the elections, and a subsequent section renders *269 him indictable for a high misdemeanor, if he fail to give the notice required by the Act; and, upon such failure of the Clerk, the Commissioners are directed, nevertheless, to advertise and hold the election. But suppose the very possible case of there being no Clerk to give the notice, and, of course, no Clerk to fail oí giving the notice. Is it not at least questionable whether the managers would not, in that case, be obliged to hold the election under the Act of 1815, in order to prevent its failing altogether 1
The chief grounds of exception to the election of the rela-lator are, then, clearly unfounded in law. To meet the objection of irregularity, which the grounds suppose, it may be observed, that the end of popular elections is to discover which of the candidates has the greatest number of votes from among the qualified voters. The polls are, of necessity, liolden by many persons, at different places, and such elections are, of course, subject to irregularities. Where, then, after legal notice to the voters, the polls have been fairly holden by the proper managers, at the plaees, and for the time designated, and one of the candidates has received a greater number of votes than the rest; he is the proper appointee, and the end of the election is answered. It follows, irresistibly, that we are to construe the rules for the regulation of popular elections with a constant direction to that end, and not to be deterred by minute objections and mere irregularities of manner or form. It is upon such considerations, that both the Act of 1815 and that of 1839 make the validity of the election depend, in the first instance, on the decision of the managers themselves. By the former Act, a majority may decide; by the latter, the presence of two thirds is required: which answers the fourth ground of appeal, in reference to the number required to de-pide the election. That ground applies to the Act of 1839, only. In fact, all the objections to the election of the relator depend upon the assumption, that the election ought tp have *270 been held under that Act; which being shown to be groundless, the rest have no material application to the case.
Upon the whole case, therefore, the Court are unanimous in confirming the judgment of the Circuit Judge, and the appeal is dismissed.